**W. McGill WOODWARD and W. McGill Woodward, P.A., Plaintiffs,**

v.

**Bernie WEISS and American Medical Analysis, Inc., Defendants.**

Civil Action No. 2:95–0578–23.

United States District Court,
D. South Carolina,
Charleston Division.

May 22, 1996.

Thomas S. Tisdale, Jr., Young, Clement, Rivers & Tisdale, Charleston, SC, for plaintiffs.

Thomas J. Wills and James E. Reeves, Barnwell, Whaley, Patterson & Helms, Charleston, SC, Louis D. Nettles, Florence, SC, for defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on motion of the defendants, Bernie Weiss, M.D., and American Medical Analysis, Inc., for summary judgment. This is a defamation action based on medical analysis reports provided by the defendants to State Farm Insurance Company ("State Farm"). Based on the briefs submitted by the parties and oral arguments heard on May 6, 1996, this court finds that the alleged libel is constitutionally protected and also protected by absolute and qualified privilege and therefore, grants summary judgment in favor of the defendants.

## I. BACKGROUND

Both the Plaintiff, Dr. McGill Woodward and the defendant, Dr. Bernie Weiss, are medical doctors who at various times serve as expert witnesses for personal injury claims. Dr. Woodward is a member of the American Board of Forensic Examiners, which is a specialty involving the interrelationship between the legal and medical professions. (Dep. Dr. Woodward, pp. 4–5). Dr. Bernie Weiss' sole employment is providing medical consultant reports for American Medical Analysis, Inc.

In 1992 and 1993, Dr. Woodward treated three persons involved in two separate car accidents; Christopher Ward, who was referred by attorney John Campbell, Romana Almazan and Arturo Delacruz, who were referred by the Law Firm of George Sink. Each of these individuals, through their attorneys, made claims against State Farm. State Farm sent the claimants' medical rec-

ords to Dr. Weiss for review and evaluation. Dr. Weiss prepared two medical analysis reports ("Reports") which he forwarded to State Farm and no one else. In the Reports, he disagreed with Dr. Woodward's treatment and questioned whether the injuries claimed were related to the accidents. As part of settlement negotiations, these Reports were evidently forwarded by State Farm to the claimants' attorneys. Dr. Woodward has now filed this suit against Dr. Weiss for libel based on the Reports.

## II. SUMMARY JUDGMENT STANDARD

▉ To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. CenTra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Finally, the "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)).

## III. ANALYSIS

This court finds that the alleged libel is constitutionally protected opinion and is also protected by an absolute and a qualified privilege.

## A. FIRST AMENDMENT PROTECTION

▉ This court finds that the alleged libel is constitutionally protected opinion.

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas. But there is no constitutional value in false statements of fact.

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). The United States Supreme Court recognized that opinion statements, as opposed to verifiable factual statements, are granted constitutional protection. *See Gertz,* 418 U.S. at 340, 94 S.Ct. at 3007; *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). The determination of what is constitutionally protected opinion and what is unprotected fact is an issue for the court. *Potomac Valve and Fitting, Inc. v. Crawford Fitting,* 829 F.2d 1280, 1285 n. 12 (1987). Between the *Gertz* decision in 1974 and *Milkovich* in 1990, several circuits, including the Fourth Circuit, developed tests for determining if an alleged defamatory statement was constitutionally protected opinion or unprotected fact.[1] The

---

1. The Fourth Circuit in *Potomac* required a two part test. First, a court should determine whether the alleged libel can be objectively verified as true or false. If the statement cannot be objectively verified, then it is not actionable as defamation. Second, even if the statement can be verified, a court must consider three other factors: (1) the author's or speaker's choice of words, (2) the context of the challenged statement within the writing or speech on the whole, and (3) the broader social context into which the statement fits. If after considering these factors, either individually or in conjunction, the reader would recognize the statement as an opinion, it is constitutionally protected. *Potomac,* 829 F.2d at 1285–89.

United States Supreme Court in *Milkovich* appeared to discount such tests stating "existing constitutional doctrine" was adequate to protect opinions; however, the Court continued to use the same or similar factors.

■ First, the Court, citing *Philadelphia Newspapers Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), stated an alleged defamatory statement "must be provable as false before there can be liability under state defamation law." *Milkovich,* 497 U.S. at 18, 110 S.Ct. at 2705. "[O]pinion statements, defamatory or otherwise, are not actionable unless they contain provably true or false factual connotations." *Chapin v. Greve,* 787 F.Supp. 557, 563 (E.D.Va.1992) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990)). Clearly, if the statement was not capable of being verified as false, there could be no liability for defamation.

■ In this case, the Reports of Dr. Weiss are not capable of being verified as false, and therefore, are not actionable. Plaintiffs allege the following two statements, contained in the Reports, are libelous.

> They have both received excessive and not recommended treatment and x-rays. If Dr. Woodward had instructed the patients in a good home exercise program, as the medical literature strongly suggests, then the patients most likely would have returned to normal sooner and without complaints. His opinion that these patients were entitled to 5% and 6% permanent disability, respectively, is not supported by the records ...
>
> The treatment rendered is far in excess of any possible injury from this accident ... There is no relationship to a TMJ disease from an injury from this accident.... However, the treatment rendered is con-

sidered okay, although it was given excessively.

This court finds that none of these alleged libelous statements are verifiable facts. Whether treatments and x-rays are recommended or excessive; whether the patients would have most likely returned to normal sooner with the use of a home exercise program; whether the patients were entitled to 5% and 6% permanent disability ratings; and whether there is a relationship between TMJ and the claimed injury, are all opinions, not verifiable facts. There is no standard which could be used to render an objective, verifiable, factual answer to these questions. Medicine, with all its great accomplishments, remains an inexact science. Doctors frequently refer to "medical science" but other disciplines have always referred to the practice of medicine as the healing art. Treatment considered appropriate by one doctor may be considered excessive by another doctor. Dr. Woodward, himself, testified in his deposition, "there are always differences of opinions between doctors." (Dep. of Dr. Woodward, p. 25, lns. 16–17) Dr. Weiss in his Reports disagreed with the opinion of Dr. Woodward. Dr. Woodward may freely disagree with Dr. Weiss' opinion or even find Dr. Weiss's opinions pernicious. However, the Reports remain Dr. Weiss' opinions and are constitutionally protected.

■ Second, the United States Supreme Court has held that statements which can not be reasonably interpreted as stating actual facts about an individual should be given constitutional protection.[2] *See Milkovich,* 497 U.S. at 17, 110 S.Ct. at 2705 (citing *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). Read in their entirety, the Reports are clearly the opinions of Dr. Weiss. Without any

---

2. This standard is similar to the second prong of the *Potomac* test which stated even if the court finds the statements can be verified as true or false, they nevertheless are protected. "We hold that a verifiable statement, a statement that [can be objectively characterized as true or false], nevertheless qualifies as an 'opinion' if it is clear from *any* of the three remaining factors *individually or in conjunction* that a reasonable reader or listener would recognize its ... subjective character...." (emphasis added). *Potomac,* 829 F.2d at 1288 (The Fourth Circuit in determining

these factors borrowed from and modified *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984)). *Potomac* requires a court to examine the context of the challenged statement. The court noted that "the word 'blackmail' taken out of context might easily appear to refer to a specific criminal activity. Read as a whole, however, the article at issue [may provide] the reader enough background information to realize that the term blackmail has only been used to criticize the Plaintiff's bargaining position." *Potomac,* 829 F.2d at 1287–88 n. 23.

additional information, it is obvious from the Reports that Dr. Weiss was asked to review the listed medical records. The obvious purpose in sending the medical records to Dr. Weiss for review was to obtain a second opinion as to the propriety of the treatment. It is equally obvious that since Dr. Weiss did not actually treat the patients, anyone reading the Reports would be fully aware that Dr. Weiss was not stating facts of which he had personal knowledge, but was opining based on records which were sent to him. In addition, the Reports state that they are opinion.[3] Therefore, the alleged libelous statements, when read together with the complete Reports, are clearly the embodiment of Dr. Weiss' medical opinion.

### B. ABSOLUTE PRIVILEGE

■ This court also finds that the Reports were rendered as a preliminary step to a judicial proceeding which bore a reasonable relation to litigation, and they are therefore absolutely privileged.

> [An] absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it.

*Crowell v. Herring*, 301 S.C. 424, 392 S.E.2d 464 (App.1990) (citing Restatement (Second) of Torts § 587 comment (e) (1977)). Restatement (Second) of Torts § 588 (1977), which *Crowell* recognized, states:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding ..., if it has some relation to the proceeding.

Comment (b) to § 588 states:

> The privilege also protects [the witness] while engaged in private conferences with

an attorney at law with reference to proposed litigation, either civil or criminal.

In *Crowell*, a Veterans of Foreign Wars ("VFW") member was acquitted in a VFW court martial hearing of charges alleging improper receipt of money from a company which maintained video machines at the VFW. After his acquittal, the member brought an action for slander, libel and malicious prosecution against two officials of his VFW post. Part of the alleged defamation was made by these two officials during their respective depositions and during the court martial proceeding. The court held these statements were absolutely privileged. However, part of the alleged defamation was the statements made by these officials during the investigation which led to the court martial proceedings. The court held that these statements were also absolutely privileged because they were preliminary steps to the court martial proceeding and they bore a relation to the contemplated court martial proceeding.

■ Likewise, Dr. Weiss was asked to review and investigate treatment rendered to persons making claims against State Farm's insureds. His understanding was that his Reports could be used as an exhibit in a future trial proceeding and that he could be called upon to be a witness in a proceeding such as a deposition or trial.[4] Clearly, if Dr. Weiss' Report was part of an actual trial or deposition, his statements would be absolutely privileged. In this case, the Reports were preliminary steps leading to a trial and bore a reasonable relation to the upcoming litigation.

The New Jersey Supreme Court found a sound policy reason behind allowing absolute privilege to alleged defamation prior to the institution of a formal proceeding in *Rainier's Dairies v. Raritan Valley Farms*, 19 N.J. 552, 117 A.2d 889 (1955). In that case, petitioners asked the Director of the Office of Milk Industry to investigate a possible price

---

**3.** Even though a characterization of a statement as an opinion does not necessarily make it constitutionally protected, the characterization should be considered in determining whether a statement should be reasonably interpreted as stating actual facts. *See Milkovich,* 497 U.S. at 18, 110 S.Ct. at 2705.

**4.** This finding was evidenced by an Affidavit of Dr. Weiss. Plaintiffs submitted no affidavits or sworn testimony to the contrary.

fixing scheme. The petitions were unsolicited and were given prior to the institution of a formal investigation or proceeding. The court held that the petitions to investigate were absolutely privileged. *See Rainier's,* 117 A.2d 889. The South Carolina Court of Appeals in *Crowell* held, "[t]he reasoning behind the decision in *Rainier's* is sound and applicable to the case at bar. The threat of a civil action and slander or libel would undoubtedly have a chilling effect on those tempted to initiate legitimate investigations or inquiries into other supposed wrongdoing." *Crowell,* 392 S.E.2d at 468.

Likewise, an insurance company or anyone facing a claim involving personal injury, should have the right to initiate legitimate investigations and inquiries into those alleged personal injuries prior to the commencement of a lawsuit. If a difference of opinion is going to bring about a defamation cause of action, there will be a chilling effect upon a party's ability to initiate legitimate inquiries and also upon a medical provider's ability to render contradictory, but needed, second opinions.

This case is similar to *Kahn v. Burman,* 673 F.Supp. 210 (E.D.Mich.1987). In that case, a defendant/physician in a medical malpractice case sued the plaintiff's expert witness, also a physician, alleging, among other things, defamation. The court granted the plaintiff's expert witness absolute immunity. The court stated:

> Although Dr. Burman's reports are not statements that were made under oath in the course of litigation, they may well satisfy the witness immunity prerequisite of 'relevancy' to the judicial proceedings.... To hold otherwise would defeat the purpose of witness immunity, which is to ensure the judicial process functions unimpeded by fear on the part of its participants that they will be sued for damages for their part in the proceedings.

*Kahn,* 673 F.Supp. at 212.

Likewise, Dr. Weiss' Reports were prepared with his understanding that he could be called as a witness in this case. Absolute immunity for defendant's expert witness cannot be limited by plaintiff's decision to actually file suit. Accordingly, this court finds that the Reports are protected by absolute privilege.

### C. QUALIFIED PRIVILEGE

██ Further, the Reports were also protected by a qualified privilege.

The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

*Manley v. Manley,* [291 S.C. 325] 353 S.E.2d 312, 315 (S.C.Ct.App.1987) (quoting *Conwell v. Spur Oil of Western South Carolina,* [240 S.C. 170] 125 S.E.2d 270, 274–75 (S.C.1962)).

██ In this case, Dr. Weiss was asked to review medical records and give an opinion to determine if the claimant's treatment was appropriate. After analyzing those records, he wrote a medical report and gave it to the insurance company making the request, State Farm. State Farm has an interest in insuring that it does not pay a fraudulent or overpriced claim. Dr. Weiss agreed to use his medical expertise to assist in that effort. He gave opinions to the questions asked and communicated with State Farm and with no one else. Therefore, the Reports are protected by qualified privilege.

### IV. CONCLUSION

It is therefore,

**ORDERED,** for the reasons stated above, that Defendants' Motion for Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**